UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SHIRLEY LYNN BOGER, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO.: 6:19-cv-37 | |
| § | | |
| FALLS COUNTY and RICKY SCAMAN, § | | |
| SHERIFF OF FALLS COUNTY, in his § | | |
| official capacity, § | | |
| § | | |
| Defendant. § | JURY TRIAL DEMANDED | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff **SHIRLEY LYNN BOGER** ("Boger") and files this ORIGINAL COMPLAINT against Defendant **FALLS COUNTY** and **RICKY SCAMAN, SHERIFF OF FALLS COUNTY,** in his official capacity ("Scaman"). Plaintiff states as follows:

## I.
## PARTIES

1. Plaintiff Boger is an individual who currently resides at 127 CR 2903 Reagan, Texas 76680. At all times relevant to the causes of action alleged in this Complaint, Plaintiff Boger was a resident of the district and worked in Falls County, Texas. Plaintiff has standing and capacity to file this suit, and the Defendant is being sued in its correct capacity.

2. Defendant Falls County is a governmental entity by virtue of the laws of the state of Texas and is an employer as contemplated under (1) Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq.; and (2) the provisions of the Texas Commission on Human Rights Act (TCHRA) who may be served with process by way of the Falls County Judge, The

Honorable Jay T. Elliot, located at 125 Bridge Street, Room 203, Marlin, Texas 76661.

3. In his capacity as Sheriff of Falls County, Scaman is a policy maker and appointing authority. As such, Scaman is the highest level policy maker and decision maker within the Sheriff's Department of Falls County.

4. Scaman, in his official capacity as Sheriff of Falls County, actively participated in and/or approved the decisions and actions complained of herein, and shared, knew of, condoned, ratified, and acquiesced in the unlawfully discriminatory motives and actions underlying said actions.

## II.
## JURISDICTION & VENUE

5. The Court has subject matter jurisdiction over this case because it arises under the laws of the United States and is brought to recover damages for deprivation of equal rights. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Texas Labor Code §21.051 cause of action, as well as the other Texas causes of action, because the state law claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. In May of 2018, Plaintiff Boger filed her initial complaint with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC").

7. 180 days having passed since said initial filing, and Plaintiff Boger requested and received a Notice of Dismissal and Right to File Civil Action letter from the TWC on December 6, 2018 ("TWC Letter"). Plaintiff Boger is still waiting to receive a Notice of Right to Sue letter from the EEOC. This lawsuit has been filed within sixty (60) days of receipt of the TWC Letter.

8. All conditions precedent to filing this lawsuit and as required by law have been performed or have occurred.

9. Venue is proper in this judicial district court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because Title VII cases may be brought in any judicial district in the State in which

any unlawful employment practice is alleged to have been committed and the acts complained of were committed in the Western District of Texas, Waco Division.

### III.
### FACTS

10. Scaman was sworn in as the Sheriff of Falls County, Texas on January 1, 2017. Since that time, Scaman has continuously served as the lead law enforcement officer and policy/decision maker with the Falls County Sheriff's Department. As outlined below, since almost the inception of Scaman's term as Sheriff, he has employed a habitual history of discriminatory conduct against female employees of Falls County, particularly against those most vulnerable and under his direct supervision and control.

11. Nanci Anderson began employment with the Falls County Sheriff's Office on January 1, 2017, as the Assistant Chief. By March 2017, Scaman began a series of discriminatory actions against Mrs. Anderson which ultimately lead to her resignation. These actions by Scaman against Mrs. Anderson included repeated unwanted sexual advances and subsequent retaliation for the rejection of said advances. Mrs. Anderson tendered her forced resignation on June 3, 2017, with her final day of employment being June 9, 2017.

12. Eventually, Mrs. Anderson filed a Federal lawsuit against Falls County due to the wrongful and discriminatory acts of Scaman.

13. Throughout Scaman's tenure as Sheriff, and despite multiple complaints against him for discriminatory acts, Falls County has refused to act. Scaman has never been reprimanded, and he has continually remained the Sheriff of Falls County.

14. Following the forced resignation of Mrs. Anderson, Scaman continued his pattern of discrimination and sexual harassment in the workplace, this time directed at Plaintiff Shirley Boger. Plaintiff Boger worked for Falls County, Texas, from July 2017 until March 8, 2018. Plaintiff Boger began her work with Falls County, Texas, as a part-time dispatcher in the Falls County Sheriff's

Department. Beginning in September 2017, Plaintiff Boger's role with the Falls County Sheriff's Department expanded to both part-time dispatcher and part-time jailer. On November 17, 2017, Plaintiff Boger was offered the opportunity to begin working full-time hours for Falls County as both a dispatcher and a jailer, and she began working such full-time hours on December 1, 2017. During the entire time that she worked for Falls County, Scaman was Plaintiff Boger's ultimate boss and the final authority figure controlling her work schedule and her job duties.

15. Almost immediately after Plaintiff Boger began working at the Sheriff's Department, Scaman began making unwanted, sexual comments toward her. This behavior of Scaman continued from July 2017 until late November 2017.

16. During the week of November 27, 2017, Scaman's deviant behavior escalated even further. Scaman paged Plaintiff Boger while she was on duty at the jail and ordered her to leave the jail floor and come to his office for a meeting with him. Since he was her boss and the ultimate authority figure at the Falls County jail, Plaintiff Boger complied. When Plaintiff Boger arrived at Scaman's office, he closed the door behind her. He then asked, "Have you been thinking about me?" Plaintiff Boger was completely taken off guard. Scaman then said, "I want you to touch me."

17. Scaman then grabbed Plaintiff Boger, pulled her in close to him, and started kissing and licking her face. Scaman then proceeded to grope her, rubbing his hands on her breasts and her buttocks. Plaintiff Boger stood there in shock and could barely move. Scaman then put his hands inside Plaintiff Boger's uniform shirt and then down her uniform pants. He reached down the back of her uniform pants and began to digitally penetrate her vagina with his fingers.

18. Plaintiff Boger was mortified. She could barely breath or move. When Scaman was done using Plaintiff Boger's body for his personal sexual gratification, he told her to straighten up her uniform and leave his office. Plaintiff Boger tried to gather her composure and return to her duties on the jail floor.

19. Plaintiff Boger did not report the first incident that occurred in Scaman's office because she feared that he would retaliate against her. Plaintiff Boger really enjoyed working as a dispatcher and jailer. She was proud to serve her home County in a law enforcement role. Plaintiff Boger tried to convince herself that the first office incident was an isolated event, and if she just worked hard and did her job well, Scaman would leave her alone and not sexually assault or harass her again.

20. Plaintiff Boger was wrong. From the week of November 27, 2018, until the week of February 5, 2018, Scaman "called Plaintiff Boger to his office" on at least twenty (20) more occasions. Almost every time, Plaintiff Boger was on duty on the jail floor when Scaman paged her and ordered her to come to his office. Plaintiff Boger was forced to leave her post on the jail floor. She had to get a fellow employee to cover her duties while she obeyed the Scaman's commands. Plaintiff Boger was afraid that if she did not comply with the Scaman's requests that he would reprimand her, or worse.

21. During the 20+ "office visits," Scaman closed the door behind Plaintiff Boger, grabbed her, and violently kissed and licked her face. He groped her body, especially her breasts and buttocks. Scaman fondled Plaintiff Boger outside of her uniform, and then placed his hands inside her clothing. Approximately half of the "office visits" ended with Scaman "fingering" Plaintiff Boger's vagina from behind with one hand while he rubbed his own genitalia with his other hand. During at least ten (10) of the "office visits," Scaman got so aroused that he escalated the sexual violence to such a point that he grabbed Plaintiff Boger by the shoulders, turned her around, pushed her over his office desk, pulled down the back of her uniform pants, and violently thrust his penis into Plaintiff Boger's vagina from behind. Plaintiff Boger just held her breath and closed her eyes while Scaman had unauthorized, unwanted, and unprotected sexual intercourse with her.

22. During the 20+ times that Scaman sexually assaulted Plaintiff Boger in his office, she does not recall him saying much. Usually Scaman just grunted and breathed hard. However, Plaintiff

Boger does recall Scaman, when she tried to resist his advances, specifically make the following statements:

> **"I'm the boss…I can do what I want."**
>
> **"Nobody is gonna do anything to me…I'm the Sheriff."**
>
> **"I'm not going anywhere. If you want to complain about what I am doing, you can always go back to being a stripper."**

23. So, not only did Plaintiff Boger have to endure sexual assault and sexual degradation by Scaman, he also hurled arrogant and insulting words at her that made her feel less than worthless. In addition to the grotesque and inappropriate behavior that occurred in Scaman's office, Scaman also made lewd, offensive, and sexualized comments to Plaintiff Boger, both in person and via cell phone calls and texts. The workplace at Falls County jail was permeated with Scaman's comments of sexual innuendo, ridicule, degradation, and insult to Plaintiff Boger. At least ten (10) times, Scaman requested that Plaintiff Boger send him nude photographs of herself via text.

24. By the second week of February, Scaman's wrongful conduct had taken a horrific toll on Plaintiff Boger. She was pushed to the brink, both physically and emotionally. She became withdrawn.

25. Plaintiff Boger decided that she would no longer tolerate any physical contact by Scaman with her body. However, Plaintiff Boger also feared that she might get fired if she did not keep letting Scaman have his way with her. Plaintiff Boger informed Scaman that she would not go to his office alone anymore. Plaintiff Boger tried to focus on her work, thinking if she did a great job, maybe Scaman would leave her alone and move on.

26. Plaintiff Boger was wrong again. From the moment that she informed Scaman that she would not allow him to sexually exploit her anymore, until she was constructively discharged on March 8, 2018, Scaman made Plaintiff Boger's work environment intolerable. Scaman disrespected her. Scaman made threats to her about her son – specifically stating that he would arrest Plaintiff

Boger's son. Plaintiff Boger was isolated by her supervisor staff at the jail, which included Ed Nehring (who happens to be Scaman's cousin). Anytime Plaintiff Boger needed assistance to perform her job duties, or if she mentioned any deficiencies at the jail, she was completely ostracized and ignored.

27. Plaintiff Boger had several co-employees that were female, including Corporal Brown (day shift supervisor at the jail) and Corporal Laughlin (evening shift supervisor at the jail). Plaintiff Boger did not witness, or even hear of, any incidents where Scaman treated Plaintiff Boger's fellow female employees the way that he treated Plaintiff Boger.

28. Plaintiff Boger now knows that Scaman was never interested in her work, her law enforcement abilities, or her commitment to Falls County. Scaman was only interested in using Plaintiff Boger's body for his demented sexual gratification. By March 8, 2018, even though she tried as hard as she could to keep working to the best of her ability, Plaintiff Boger reached a breaking point. Scaman's treatment of her, and the caustic and harassing work environment that he created, forced Plaintiff Boger to leave.

29. Plaintiff Boger has struggled with whether or not she should report all of these things that have happened to her. To whom would she report? Scaman is the head of law enforcement and one of the most powerful people in Falls County.

30. Plaintiff Boger was afraid that she would be treated differently and be placed in a more hostile work environment than she was already experiencing. She strongly feared that she would lose her job, which ultimately did happen once she rejected Scaman's sexual advances. Plaintiff Boger was also afraid that she would be singled out, and that she and her family would be treated differently by County officials. Plaintiff Boger contemplated trying to just ignore all these bad acts by Scaman and desperately hoped that he would leave her alone and just let her perform her job duties. Plaintiff Boger finally came to the realization that, without legal intervention, Scaman's inappropriate and illegal behavior would not stop. Plaintiff Boger is also very concerned that Scaman will target additional

females that work as public servants for Falls County, Texas. Plaintiff Boger does not want any person to ever be subjected to the extreme difficulties that she has had to endure.

31. Plaintiff Boger loved her job. She truly enjoyed serving Falls County, Texas and its citizens. Those citizens all deserve a Sheriff's Department that is appropriate and free of harassment, sexual assault, sexual innuendo, ridicule, degradation, and insult. Scaman's pattern of long-lasting and uninhibited sexual deviancy has gone unredressed for far too long.

32. As summarized above, Scaman created a dynamic where he had leverage, authority, and control over Plaintiff Boger, and used that authority and control to (1) isolate Plaintiff Boger from her fellow co-workers; (2) openly demean and harass her at work based on her sex; (3) repeatedly pressure her to satisfy his sexual desires; and (4) retaliate against her when she failed to satisfy his demands. Scaman did not afford her the same level of respect and decency as her male colleagues, and her primary job was to tend to his sexual needs, not be the jailer.

33. Based upon the above described and referenced continuing discriminatory actions, including repeated unwanted sexual advances and subsequent retaliations for the rejection of said advances, Plaintiff Boger was constructively discharged, with her final day of employment being March 8, 2018.

**Post-Employment with Falls County**

34. In May of, 2018, Plaintiff Boger filed a charge of discrimination against Scaman and Falls County with the TWC and the EEOC alleging violations of TCHRA and Title VII.

35. Plaintiff Boger received the TWC Letter, giving her the right to sue for state law violations on December 6, 2018.

36. Since her constructive discharge, Plaintiff Boger has struggled to hold down a steady job. She has worked sporadically as a part-time dispatcher for a private trucking company. Scaman is still the Falls County Sheriff.

37. The unlawful employment practices complained of in the foregoing were done with malice or with reckless indifference to the federally and state protected rights within.

## IV.
## CAUSES OF ACTION

**A. Gender Discriminaiton/Sexual Harassment (Hostile Work Environment, Quid-Pro-Quo, and Constructive Discharge) Under Title VII of the Civil Rights Act Against Falls County**

38. Plaintiff incorporates all of the foregoing and succeeding paragraphs herein to the extent not inconsistent herewith. Plaintiff would further show as follows:

39. Falls County's employment practices had a disparate impact on Plaintiff Boger because of her sex and gender, including sexual harassment.

40. The actions described throughout this Complaint caused Plaintiff Boger to experience severe and pervasive harassment that altered the terms of her employment, including resulting in her constructive discharge, and created an abusive working environment.

41. Said harassment was unwelcome and subjectively offensive to Plaintiff Boger, as well as objectionably offensive such that a reasonable person would find said actions hostile and abusive. In fact, the conditions became so intolerable that a reasonable employee would feel compelled to resign, as Plaintiff Boger was so compelled.

42. Moreover, said harassment occurred at the hands of Scaman, who was Plaintiff Boger's direct and ultimate supervisor. As previously referenced, said harassment resulted in a tangible employment action, including Plaintiff Boger's constructive discharge, as well as other significant changes in employment benefits that resulted from Scaman's harassment and unwanted sexual pursuit and abuse of Plaintiff Boger, coupled with Plaintiff Boger's subjection to and rejection of the same. Accordingly, Falls County is strictly liable for the violations of Title VII described herein.

43. Said harassment was so severe and pervasive to be sufficient to constitute a hostile work environment claim under Title VII. Furthermore, Scaman, in his position as Sheriff, was a proxy

for Falls County, thus negating any affirmative defense potentially pled by Falls County. In addition, any such defense would fail on its own terms as Falls County did not exercise reasonable care to prevent and correct promptly any sexually harassing behavior by Scaman.

44. Falls County's unlawful actions of gender discrimination/sexual harassment violate provisions of Title VII and the Texas Labor Code justifying an award, *inter alia*, of compensatory damages against Falls County.

45. Such discrimination and harassment have caused Plaintiff Boger to suffer, among other things, damages of severe emotional distress, mental anguish, loss of enjoyment of life, lost wages, and lost seniority and prestige. Such discrimination and harassment were committed with malice and reckless indifference to the rights of Plaintiff Boger, who has, in addition to the above, been denied opportunities to which she was entitled had she not been intentionally discriminated against by Falls County.

46. Accordingly, Plaintiff Boger now demands full compensation from Falls County for her injuries, as well as all other relief she is entitled to under Title VII, including attorney's fees.

**B.** **Gender Discrimination/Sexual Harassment (Hostile Work Environment, Quid-Pro-Quo, and Constructive Discharge) Pursuant to the Fourteenth Amendment as Made Actionable Under 42 U.S.C. § 1983 Against Falls County**

47. Plaintiff incorporates all of the foregoing and succeeding paragraphs herein to the extent not inconsistent herewith. Plaintiff would further show as follows:

48. The employment relationship between Plaintiff Boger and Scaman, in his official capacity as Sheriff, gives rise to a cause of action where gender discrimination and sexual harassment are alleged to be the causative agents of an adverse action within the scope of the employment relationship.[1] Defendant Falls County is a governmental entity subject to the Fourteenth Amendment,

---

[1] To state a claim under § 1983, the plaintiff must prove (1) one or more of her constitutional rights were violated; (2) the violation was committed by a person acting under color of state law; and (3) "an official policy or custom" of the governmental entity "was a cause in fact" of the violation. *Lefall v. Dallas Independent School Dist.*, 28 F.3d 521, 525 (5th Cir.

as applied through 42 U.S.C. § 1983.

49. By subjecting Plaintiff Boger, a female, to a sexually hostile work environment on the basis of her gender, Scaman, in his official capacity, violated the Equal Protection Clause and Substantive Due Process Clause (Right to Bodily Integrity) of the Fourteenth Amendment to the United States Constitution as made actionable pursuant to 42 U.S.C. § 1983.

50. Specifically, Plaintiff Boger was subjected to a hostile work environment based upon the unwelcomed sexual harassment by Scaman, and, after refusing Scaman's sexual advances and complaints of such, she began to suffer from retaliation and adverse employment actions. Plaintiff Boger belongs to a protected class based upon her gender and was subjected to unwelcome harassment. The harassment was based upon her membership in the protected class, the harassment affected a term, condition, or privilege of her employment and Defendant knew or should have known of the harassment and failed to take prompt remedial action.

51. The harassment affected a term, condition, or privilege of Plaintiff Boger's employment, in that it was sufficiently severe and pervasive to create a work environment that is both subjectively and objectively abusive (i.e., one that Plaintiff Boger perceived as abusive, and one that a reasonable person would find hostile or abusive).

52. By discriminating against Plaintiff Boger in the terms and conditions of her employment, Scaman, in his official capacity, has subjected her to sex discrimination in violation of

---

1994). "[S]exual harassment in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment" and is therefore actionable under § 1983. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). Where, as here, Plaintiff Boger will bring her Section 1983 claims as a parallel remedy for Title VII violations, the analysis under the two statutes is the same. *Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002).; *Cervantez v. Bexar County Civil Service Commission*, 99 F.3d 730, 734 (5th Cir. 1996) ("we have on numerous occasions recognized that section 1983 and Title VII are parallel causes of action"); *Wallace v. Texas Tech. University*, 80 F.3d 1042, 1047 (5th Cir. 1996) (applying the same *prima facie* test to discrimination claims under Title VII and section 1983); *Merwine v. Board of Trustees for State Institutions of Higher Learning*, 754 F.2d 631, 635 n. 3 (5th Cir. 1985) ("when a § 1983 claim is used as a parallel to a Title VII claim under a given set of facts, the elements required to be established for each claim are deemed the same under both statutes"). The Fifth Circuit has long held that the Fourteenth Amendment affords a person "[t]he right to be free of state-occasioned damage to …bodily integrity." *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450-51 (5th Cir. 1994) (en banc).

the Equal Protection Clause and the Substantive Due Process Clause (Right to Bodily Integrity) of the Fourteenth Amendment to the United States Constitution as made actionable pursuant to 42 U.S.C. § 1983.

53. These acts that were committed by Scaman were not acts of mere negligence, but rather acts that shock the conscience.

54. Scaman used his position to implement and carry out a custom, policy, and procedure to sexually harass Plaintiff Boger based upon her sex.

55. Scaman was acting under color of state law, involving the misuse of his power, based upon his position as a head authority figure-Sheriff.

56. Scaman, in his official capacity and as the Sheriff of Falls County, had the final policymaking authority to alter Falls County's policy concerning gender discrimination, sexual harassment, and retaliation.[2]

57. Due to the unique structure of county government in Texas, elected county officials, such as Scaman, hold virtually absolute decision making authority; therefore, his official conduct and decisions represent official policy for which Falls County may be held responsible under Section 1983.

58. In fact, there were multiple official policies Scaman implemented. Falls County's policies and/or customs included, but were not limited to, inappropriately touching female employees; demeaning and intimidating female employees, including through threats, names, photographs, among other things; requesting sexual acts be provided from or coordinated by female employees; requesting sexual photographs of female employees; disregarding female employees complaints of harassment; retaliating against female employees that do not satisfy his sexual demands, including by withholding

---

[2] It is well settled that local government entities such as counties are "liable for damages under Section 1983 for constitutional violations resulting from official county policy or custom." *See Flores v. Cameron County, Tex.*, 92 F.3d 258, 263 (5th Cir. 1996). Further, in Texas, "it has long been recognized that … the county sheriff is the county's final policymaker in the area of law enforcement." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990).

raises, giving male colleagues credit for work performed by a female, preventing said female from performing her job by instructing colleagues to not contact her or directly countermanding her orders, and constructively discharging the female employee.

59. These policies caused the constitutional violations of the Fourteenth Amendment.

60. Further, no reasonable public official in Scaman's position could have, at the time he committed the acts described herein, reasonably have believed that such acts were lawful.

61. For the reasons cited above, Defendant is liable for exemplary/punitive damages as said unlawful actions were willful, wanton, and intentionally directed to harm Plaintiff Boger.

62. Further, Defendant's actions were reckless and were taken in willful disregard of the probable consequences of said actions.

63. The violations described in this section by Falls County and Scaman, in his official capacity as Sheriff, caused Plaintiff Boger to suffer, among other things, damages of severe emotional distress, mental anguish, loss of enjoyment of life, lost wages, and lost seniority and prestige.

64. Accordingly, Plaintiff Boger now demands full compensation from Falls County for her injuries, as well as all other relief she is entitled to under 42 U.S.C. § 1983, including attorney's fees.

C. **Discrimination, Sexual Harassment, and Constructive Discharge in Violation of TCHRA Against Falls County**

65. Plaintiff incorporates all of the foregoing and succeeding paragraphs herein to the extent not inconsistent herewith. Plaintiff would further show as follows:

66. In addition to the above, Defendant's actions, either through itself or through its agents, representatives, and/or employees, constituted unlawful discrimination, harassment, and constructive discrimination in violation of Texas Labor Code § 21.051.

67. The violations described in this section have caused Plaintiff Boger to suffer, among other things, damages of severe emotional distress, mental anguish, loss of enjoyment of life, lost

wages, and lost seniority and prestige.

68. Accordingly, Plaintiff Boger now demands full compensation from Falls County for her injuries, as well as all other relief she is entitled to under TCHRA, including attorney's fees.

## V.
### CONDITIONS PRECEDENT

69. All conditions precedent have been performed or have occurred.

## VI.
### JURY DEMAND

70. Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby requests a trial by jury.

## VII.
### ATTORNEY'S FEES AND OTHER SPECIAL DAMAGES

71. As stated throughout this Complaint, Plaintiff is entitled to actual and compensatory damages, including, but not limited to, damages for back pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and loss of prestige pursuant to Title VII; TCHRA; and 42 U.S.C. § 1983.

72. In addition, and as stated throughout this Complaint, Plaintiff requests an award of her reasonable attorney's fees incurred in litigating the claims described herein pursuant to Title VII; TCHRA; and 42 U.S.C. § 1983. Plaintiff further requests pre-judgment and post-judgment interest.

73. Finally, Plaintiff specifically requests punitive/exemplary damages against Defendant pursuant to 42 U.S.C. § 1983.

## VIII.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer, and that after a trial on the merits, this Court enter judgment against it as follows:

a. For actual damages suffered by Plaintiff Boger;

b. For back pay to compensate Plaintiff Boger for loss of income and/or employment related benefits resulting from the discriminatory/sexually harassing actions of Defendant;

c. For compensatory damages suffered by Plaintiff Boger for severe emotional pain and suffering in the past and future, severe mental anguish in the past and future, injury to her reputation, and for adverse effects on her career resulting from the discriminatory/sexually harassing and retaliatory actions of Defendant;

d. For exemplary and/or punitive damages in the amount found by the tier of fact;

e. For an award of reasonable attorney's fees and the costs and expenses related to the litigation of these claims;

f. For pre-judgment interest at the highest rate allowed by law;

g. For post-judgment interest at the highest rate allowed by law; and

h. For such other and further relief to which this Court deems Plaintiff Boger is justly entitled to and/or deems proper, at law or in equity.

Respectfully submitted,

**JOHNSON HOBBS SQUIRES, LLP**

/s/ Ryan C. Johnson
_____

Ryan C. Johnson
State Bar No. 24048574
Scott H. James
State Bar No. 24037848
The Roosevelt Tower
400 Austin Avenue, Suite 903
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 facsimile
rjohnson@jhsfirm.com
sjames@jhsfirm.com

**ATTORNEYS FOR PLAINTIFF**